May it please the Court, William Demlong on behalf of Sun Life Assurance Company of Canada. The District Court erred in concluding that there is no duty owed to Sun Life by M&I when it negligently misrepresented that the Frenchman Foundation of Pennsylvania was the beneficiary of the Sun Life annuity and went about assisting Frenchman Foundation of Pennsylvania in the procurement of the benefits. In addition, the Court erred on the issue of justifiable reliance. Those are the two issues before this appeal. In this particular case, there's a genuine issue of fact we submit with respect to whether or not there's justifiable reliance under the facts in these particular cases. It would ask the Court to find a duty owed by M&I by taking on this particular act that they did in this case and send it back to the Court for remand for fact-finding a determined justifiable reliance. Counsel, as I understood the facts here, your client has a judgment against the wrongful recipient, the wrong Friendship Foundation, for return of the money that was paid. Am I correct or incorrect? You're correct. And we could be here all day talking about chasing that judgment, which we have received, I don't know, $15,000. Okay. I guess that was my question, because if that judgment were satisfied, I would question what damage has been incurred. Absolutely, Your Honor. And just briefly that, you know, the Fishers, we had default judgments against a number of entities. We received a little bit of money from Mr. Fisher, Turpin Meadows, who is one of the entities that we were able to attach. They're in bankruptcy in Pennsylvania right now, so it's – so we do have some of the – Because that's the obvious recourse in a legal sense. You gave it to them, but they didn't deserve it taken back. Well, unfortunately, Your Honor, this is an unfortunate circumstance for everybody. Yeah, that money came and went very quickly once Friendship Foundation had that, and it didn't get dispersed exactly how their foundation would – you would suggest it would based upon the record. Really, let me address the issue of the duty. Once they got the money. Correct. Am I correct that there was a question raised as to whether or not they were supposed to receive it? Right. Let me give you a quick background on this. What happened is – It seems like such a comedy of errors. Well, it is, Your Honor, and our argument is that the fact finder has to find out who's ultimately responsible for those errors between Sun Life and M&I. Obviously, the extent we get the money back from Mr. Fisher or any of his entities, that would be an offset. Right now, like I said, I think it's about $10,000, $12,000 we've received. But what happened in this case is M&I was the trustee for Ms. Grant, who was in this home care facility, which had an LLC name, but the DBA was Friendship Foundation. So she's in there, end of life, she decides to change the beneficiary, and what she did was the M&I representative for the annuity came out there, filled out the paperwork, put in Friendship Foundation with the Glendale address and the tax ID number for them, and that was done. M&I sent it to Sun Life. Fast forward a year, year and a half later, she dies. Unfortunately, that changed beneficiary form didn't make it into the M&I file. It languished for 16 months. So what happens is M&I, Paula Smith, as trustee for the trust, and again M&I is also the agent and personal representative, she finds this document that suggests that they owe the money, that the trust gets the money. So she sends off this letter to three different annuity companies saying, are we the beneficiaries? If so, send us the paperwork. Sun Life went ahead and said, no, you're not the beneficiary. It's this Friendship Foundation. Sent off the paperwork to Ms. Smith. That's where the problems began, and that's where we believe, had it ended there and Ms. Smith just sent it back or said, I don't know who it is, we wouldn't be here today. But she took it upon herself and did an Internet search and found this Friendship Foundation in Pennsylvania. And that's where we got. And so our position is on the restatement 552, if you're acting within the course of business and you gratuitously do that, you are now accepted that duty and then you have to act reasonably and so on and so forth. That is the main thrust of our argument. Judge Bolton, we believe, confused that. She required both that there is the course of business and at the same time a procuratory interest in that particular instance. If you look at the restatement, if you look at Arizona law, those can be parceled out separately. So what happens is then not only did, and this is why the course of business, we believe, is certainly in favor of Sun Life. This isn't a case, and they were cited in the records, of where a trust company gave a will to somebody who asked for it. There was so much more involved. In this particular case, Ms. Smith not only forwarded those documents, first of all found upon herself, found this particular entity. She gave a death certificate, which, of course, this Friendship Foundation of Pennsylvania would have no way of getting. But for her doing that in the ordinary course of her business, she actually signed the lost policy or lost annuity contract form as the personal representative for Ms. Grant so that they could effectuate the distribution of the monies as well. So even if there's a duty, you still have to show justifiable reliance. So would you turn to that? Sure. Justifiable reliance, Your Honor, and again, this is where Judge Bolton came down and said, look, you got this, you both have this change of beneficiary form, albeit M&I couldn't find it in their folder, but you had it in yours. Tax ID number was different, and address was different. So Sun Life, you should have known better and gone forward. Our position is that there's a genuine issue of fact there, and here's why. This particular case, you have to remember, M&I has a sister company who was actually the writing agent on this file as well. They're the ones that actually issued the annuity. They're the ones that went out and got the change of beneficiary form. They're the ones with intimate knowledge of not only Ms. Grant, but they actually went to the facility. So they had intimate knowledge of that. It is our position that, again, as we put in our papers to the court, Judge Bolton and here, the tax ID numbers can change on corporate entities. Addresses certainly can change. That wouldn't have been enough to bring to the, at least as a matter of law, that Sun Life was not able to justifiably rely on this particular information. Again, we received it with the death certificate from the trustee for the trust of this woman, from the personal representative of the woman, and with the death certificate. And so in that particular case, our position would be that you'd have a duty, or excuse me, there would be at least a genuine issue of fact. We don't believe a court on summary judgment motion can just simply argue that all reasonable inferences aside, summary judgment is in favor of M&I on this justifiable reliance issue. Now the duty is one thing. The justifiable rely is another, isn't it? Correct. And what we're submitting, Your Honors, the duty is something as a matter of law that this Court can find, which is if you were acting within the course of your business and you gratuitously take that on, then you've accepted that duty and you have to act in a non-negligent or certainly reasonable method. Well, I understand that, but I thought that the other argument was that you weren't you'd not reasonably rely on that because you had other ways to find out who the person, proper entity was. Right. That's a separate element, and it's justifiable reliance. Are you going to talk about that? That's what I was just speaking with a judge. And our position on that, Your Honor, is it's a fact issue. Here we have Sun Life is receiving from the writing agent, the personal representative of the deceased, the trustee of the deceased, information on the loss policy, providing the Okay. I heard that. Okay. I'm sorry. I thought that the argument was that you had other ways of finding this out and just And that you should have looked to your own records. And that's M&I's position. And our argument, Your Honor, What is your response to that? Our response to that is that our records were insufficient because the records did show that name, this French Foundation. Again, the distinction was there was a different tax ID number and different address. Our position on that is those type of things can change. Again, if it was an individual, Social Security's numbers don't change. Tax ID numbers, though, if you incorporate another state or change the organization, the IRS will require a new tax ID number. So that was not a point. So let me just be clear on that. If it had been, in fact, the same entity where they simply moved, and it was, in fact, the same entity, but they'd moved to Pennsylvania, they would have, your position is that there very likely would have been a new tax ID number, even if it wasn't really a different entity. Well, if it's the same entity that started out in Arizona and they just changed their address, I don't think that's the case. If they incorporated or changed their type of status from an LLC to a not-for-profit or whatever, those kind of circumstances, as the IRS publication of the records reflects, can cause a change in a tax ID number. So, again, the point is if you don't think that that was enough to even put you on notice. Correct. That's our position on that. And, again, this ---- Let me just ask you one more. I'm sorry to keep interrupting, but I'm trying to work this through in my head. I've been doing the same, Your Honor. If the materials in your own file were not definitive but were sufficient, and I know you don't agree with this, but if they were sufficient to put you on notice that there might be a problem that should be pursued further, does that mean that reliance would not be justified? I would say no, because what would we do? What we would do is call M&I, the writing agent, M&I, the personal representative, M&I, the trustee of the trust, and ask them. That was the source of the information. That's why the justifiable reliance issue is a fact issue. We come full circle. And so, therefore, we do believe that there would be a fact issue on that. We certainly believe there's a ---- the duty is present, given the fact that under Restated 552 if you act in the course of your business and you do it gratuitously, that would create a duty. And I'd like to save my time. Thank you. May it please the Court. My name is Charles Workin. I represent Marshall & Ellsley Trust Company. This Court has before it the illogical case of an insurance company who claims to rely upon someone else to tell it who the beneficiary of its policy is. And on that claim, the determinative issue is that of justifiable reliance. There simply was no reliance here, and certainly there was no right to rely. Except your client affirmatively told the company that they should pay out to this incorporated entity in Pennsylvania and sent forms saying the contract had been lost and what are they supposed to do with that? Actually, Your Honor, my client, M&I, did not tell Sun Life anything. My client told the Pennsylvania entity that it was the beneficiary. M&I began this communication after Ms. Grant died by communicating with Sun Life to ask if the trust was perchance the beneficiary of the annuity policy. It was informed that it was not the beneficiary. Where did this lost policy certificate, that's page 158, where was that sent? That form came with It's exhibit 8 to the Fisher deposition. Yes, Your Honor. That form was among the forms that were supplied by Sun Life to M&I when Sun Life advised M&I that Ms. Grant's trust was not the beneficiary of the annuity policy. M&I then included that. Well, M&I filled out that form because the policy was not found among Ms. Grant's papers. The annuity policy had apparently been lost. That simply is a statement being made as to the whereabouts of a document, the annuity policy itself. It has nothing to do with who the beneficiary is. The beneficiary was designated by Ms. Grant on a beneficiary designation form. Right, and it shows an Arizona address. It does indeed. And that form was sent to Sun Life. Sun Life had it in its records. Sun Life must have consulted that very form when it informed M&I that Ms. Grant's trust was not the beneficiary. So if they were able to look in their form, in their file, at that form to say, M&I, your client's trust is not the beneficiary, then they could have also and should have also looked at that very form when they got the claim form in from Pennsylvania to compare to see that the beneficiary that was making the claim or the claimant that's making the claim is, in fact, the beneficiary that was designated under the policy. And the change in address would be a red flag, but more importantly, the different tax identification numbers would be a huge red flag. And at that point, as Judge Schroeder asked, Sun Life would certainly be on notice and would be put on inquiry to ask why is there a difference here. Yes, tax identification numbers have changed, can change, but the circumstances in which they can change are very limited, and merely moving from one State to another is not reason to change. What, in your view, could and should have the insurance company done when it noticed that discrepancy or should have noticed that discrepancy, besides ask you and get the wrong information? No, it wouldn't have asked M&I. There would be no reason for it to ask M&I. What would it do? It would contact the claimant, the Pennsylvania entity, to ask it, why is it that your tax identification number is different from that on our beneficiary designation form? Contacting M&I makes no sense because, as Sun Life had already determined, M&I, its client, was not the beneficiary. And as far as Sun Life knew, it only knew that M&I was the trustee for the trust. There's been no showing here that Sun Life knew anything else about M&I. It certainly didn't know, there's been no showing that it knew, that M&I was acting as an agent for Ms. Grant's brother, who was the personal representative of the estate. But, moreover, the annuity policy is not an asset of the estate. It wasn't owned by the estate. It was owned by Ms. Grant. And when she died, the rights under it went by contract. They do not flow through the probate process to an heir or devisee. And so Sun Life would have no reason to contact. Scalia. Does the record affirmatively show what the extent of the duties of your client were, however, in terms of disposing of the property of the decedent? The record only shows, Your Honor, that my client was both the trustee for Ms. Grant's trust and was the agent for her brother, who was personal representative. And as agent of the personal representative, is it arguable at least that arranging for the divesting of this annuity contract would be within the responsibilities of the client?   And is it not arguable that the client was the trustee for Ms. Grant's trust, at least as a matter of custom and practice? No, Your Honor, it's not arguable, because, as I was saying, the annuity policy  It's not a probatable estate. It's not something over which the brother had any control. He had no responsibility over it, I think, is the most direct answer to your question. Any responsibility to have notified Sun Life with respect to the death of the decedent? No. He only had a duty in performance of his obligation as PR to ask if the estate was a beneficiary. And that wasn't the question that Ms. Smith asked. The question that she asked in her letter was, is the trust the beneficiary of the annuity policy? Now, the trust didn't own the policy. Ms. Grant bought the annuity policy, but she did not put the policy into the trust. There is the possibility, and this is what Ms. Smith thought, because she saw the list of policies in the trust file. She thought, perhaps, knowing it wasn't owned by the trust, that perhaps the trust was the beneficiary of it. So she asked, in performance of M&I's duty as trustee, is the trust the beneficiary? She was told no. She later took on the obligation, M&I later took on the responsibility, the job of being the agent for the personal representative. But by that time, I think that this mistake, this comedy of errors, had already completely unfolded and the payment had been made. Who did, following up on Judge Ripple's question, who did have the responsibility to notify Sun Life of the death? I don't know that anybody had that responsibility. Certainly a claimant who, a beneficiary who knew it was a beneficiary of the policy could notify Sun Life. But M&I ---- Have part of the problem here? No. No, I don't think so. The beneficiary of this policy was what, the nursing home? The beneficiary was a foundation that operates a nursing home that had a different trade name, a different business name, a DBA. Friendship Foundation was its legal name, its corporate name. Well, counsel, the thing that bothers me, and I know you answered that you didn't think that your client had notified Sun Life, but I'm looking at Exhibit 39 to the Smith Deposition, which has many different page numbers otherwise. But it's the letter dated January 18, 2008, that M&I sent to the wrong Friendship Foundation, saying that Janet Grant passed away on a certain date, that you are the agent for the personal representative of the estate, that during her lifetime she created annuities that named their organization as the beneficiary. But it shows a copy of that sent to Sun Life. Yes. Right? So at a minimum, you've now told Sun Life that she died and that this entity is the beneficiary. I mean, you've told them by sending them a copy, not directly, but why isn't that the same as kind of officially notifying them? I see your point, Your Honor. But yet we're back to where I began this argument in saying that we have here the most unusual, if not bizarre, case of someone telling an insurance company what it already knows. The insurance company here knew full well who its beneficiary was and knew where its beneficiary was. In fact, giving the benefit of all the doubts to Sun Life, when they sent the response to Ms. Smith saying the trust is not the beneficiary, but here are the addressed to Friendship Foundation Arizona at the Glendale, Arizona address. Ms. Smith said she didn't recall getting that letter, but because we're dealing here in the summary judgment context, it must be assumed that, in fact, Sun Life sent that letter to M&I. They knew who the beneficiary was. They had to know that when they told Ms. Smith that the trust was not the beneficiary at its Arizona address. Merely copying, as Ms. Smith did, Sun Life on her letter to the Pennsylvania entity doesn't somehow change the knowledge. It injects considerable confusion into the matter. And, again, for summary judgment purposes and purposes of reasonable reliance, we have to give the benefit not to your client, but to Sun Life. Fine. Let's talk about giving the benefit of the doubts here, because I've heard the argument made at least twice here this morning that there's a question of fact and that this case needs to go back for factual finding. But yet that wasn't the position taken by Sun Life in the trial court. In fact, there was no argument made whatsoever that there was any issue of fact. You're only hearing that now for the first time on appeal, and I think that is improper, that this Court cannot consider as a basis for reversal something that was not argued below. Generically, if both parties cross-move for summary judgment and each one thinks that it's right and they come up to us and we see factual issues, I know you're not conceding there are any, but let's assume that we do, is it your view that we're precluded from sending that back on the basis that there are factual issues that matter? I think if both parties tee up the case below with cross-motions arguing that there are no genuine issues as to any material facts and that they're each entitled to judgment as a matter of law. And they're both wrong. What do we do? Well, in this case, Your Honor. I'm asking, that's a genuine procedural question on my part. Okay. If we have two parties, both of whom take the extreme position, I'm entitled to judgment as a matter of law, this is not the only case in which this has happened. It comes up here and we say, no, you're both wrong. There are just factual issues in this case. What do we do? Let me give you two answers to that that are consistent, Your Honor. One is that, generally speaking, it may be within this Court's right, power, to send the case back, having seen independently that there are issues of fact. However, in this case, there is no way that a rational fact finder could see any issue of fact here, certainly not as to the issue of justifiable reliance. We sent interrogatories to Sun Life asking them how they relied, and if they did, how their reliance was justifiable. In neither of the answers to those interrogatories were they able to articulate either reliance or justification for it. Instead, they simply said, well, you sent the forms to the wrong entity. That is not reliance and that is not justification for it. And beyond that, this is a case where you might say that the buck stops with Sun Life. They had the information in their files. They had the designation of beneficiary in their files. They had already looked at it. And then they received the claim form, and they are at that moment the only party among the three groups here, Sun Life, MNI, and Pennsylvania, that have all of the information. They have the designation of beneficiary, the correct beneficiary with one tax ID number and address, and then they have a competing claim form with a different address and tax ID number. They were the only player in this scenario that had the ability to see the error, to see that the claimant was not the beneficiary or at least to see that a question needed to be asked and not simply rely on being cc'd on a letter from Ms. Smith or being told indirectly by virtue of a claimant making a claim. What they have said here also in answer to discovery request is that we simply pay the person who makes the claim. And if they submit the proper forms, we pay them. They admitted that they had no one who was assigned the responsibility of ensuring that the proper beneficiary was being paid, although they had a contractual duty to both Ms. Grant when she bought their annuity contract and to the beneficiary who is a third-party beneficiary of that contract to fulfill that contractual obligation. Kagan. Okay, you've used your time. Thank you, Your Honor. Just very briefly, and if you have any questions, certainly ask me and interrupt me. One thing counsel and I agree on, it is a bizarre and unusual case, but as the Court has seen through this argument, it is factually – there is a factual issue. And, Judge Graber, with respect to the summer judgment procedural issue, we didn't stipulate that it's thumbs-up or thumbs-down because of cross motions. As you said, we could have an agreed set of facts but still have inferences from those that would ultimately be factual. What exactly is the factual issue? The factual issue on the justifiable reliance, Your Honor, is we disagree as to who had what and when. We both had the change of beneficiary form. They had it, they couldn't find it.  And the fact is, what the dispute is, they suggest that, well, we should have done more due diligence when we've got the writing agent, the trustee, the personal representative who's copying Sun Life saying this is the correct entity, this Pennsylvania entity has a death certificate, a certified death certificate from the State of Arizona. How in the world would a – Fact issue? Correct. Well, it's a fact issue. No, it's a fact issue in the sense that whether or not it's justifiably relying upon that, that inquiry, if that were to create an inquiry, if an insurance company is getting a death certificate because those aren't easily obtained and it's getting passed through the trustee, personal representative and writing agent of the annuity to this entity, we believe there's at least a fact issue on whether or not that's justifiable reliance. The fact of the matter is we paid the benefits to the wrong person based upon all this information, so we did rely upon it. Yeah. Yeah. Okay. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Ripple, Graber